Quwack *v.* Cruse, and the Cabinet Makers' Union.

# IN GENERAL TERM, 1873.

CHARLES QUWACK *v.* JOHN P. CRUSE, AND THE CABINET
MAKERS' UNION, Appellants.

PLEADING—*reply, demurrer*—
PRACTICE—*objections, exceptions—special finding, judgment on.*
EVIDENCE—*contract.*

Where two paragraphs of a reply are the same in legal effect, and no objec-
tion is taken to one of them, the defendant is not injured by overrul-
ing a demurrer to the other.

If the Court, at the request of one of the parties makes a special finding of
facts and conclusions of law thereon, the statute requires judgment to
be entered in accordance with the conclusions of law, and the only
mode of saving objections to the conclusions of law is by entering
exceptions to the same. A motion for judgment on the special finding
will not present the question; nor will a motion for a new trial.

Where A contracted to sell to B all the brick he should make and burn
except the last kiln, at certain prices for each kiln, and deliver the
same wherever in the city of Indianapolis, B should direct, and after
A had burned one kiln he delivered the same to B, who accepted
them on the contract, and before the second kiln was ready for delivery
B informed A that if the second kiln had more lime in it than the
first, he must get another purchaser for it, but that he wanted to see it
before it was sold, that he wanted the good portions of it, but A must
get another purchaser for the portion having too much lime, and the
second kiln had in fact more lime in it than the first, and that it was
not from any fault or fraud of A that the lime was in the kiln, the
lime being in the clay, and B knowing at the time of the contract the
place where the clay to be used was to be obtained, and before B saw
the second kiln A sold it to another,

*Held:* That the lime in the brick of the second kiln did not justify the
defendant in refusing to take any portion of the brick.

Quwack *v.* Cruse, and the Cabinet Makers' Union.

*Held*: That A after having received notice from B, that if the second kiln had more lime in it than the first, he would not take it or that he would only take the good portions of it, might treat the contract as broken by B, and if A chose to waive his right of action against B for the breach, and protect himself from loss by selling to another, he had a right to do so, and B, having thus broken the contract cannot complain

*Held*: That B having given notice that he would not comply with the contract as a whole, he could not, without the consent of A, acquire any rights under the contract by offering to examine the kiln and take the good portions of the brick.

*Mitchel & Ketcham,* for appellants.

*Taylor, Rand & Taylor,* for appellee.

BLAIR, J.—The complaint in this case is for brick sold to the defendant Cruse and used by Cruse in the erection of a building for the defendant, The Cabinet Makers' Union, the complaint alleging notice to the Cabinet Makers' Union, under Sec. 649 of the Practice Act, and avering that the Cabinet Makers' Union was indebted to Cruse at the time the notice was given.

The Cabinet Makers' Union answered in general denial.

The defendant, Cruse, answered in three paragraphs.

The first, a general denial; the second is a counter claim alleging that the plaintiff agreed to sell the defendant Cruse all the brick he should make and burn except the last kiln, at certain prices for each kiln, and deliver the same wherever in the city of Indianapolis the defendant should direct; that the first kiln burned by the plaintiff was delivered, that afterwards other kilns were made and burned by the plaintiff, but the price having advanced, he failed and refused to deliver them as ordered, by reason of which the defendant was damaged. The third paragraph of answer was substantially the same, except that it set out a written contract for the sale of the brick. The written contract set out, is substantially the same as the contract alleged in the second paragraph.

The plaintiff replied in five paragraphs, all of which except the first, which is a general denial, are substantially the same, and set up a rescision, and abandonment of the contract after the making, and delivery of the first kiln of brick.

There was a trial by the Court, and a special finding of facts and conclusions of law, upon which the Court rendered a judgment in favor of the plaintiff, and against the Cabinet Makers' Union, for $281.35, and against defendant Cruse for costs. A general exception was entered to the finding ; and while it may be a question whether it is sufficiently specific to some questions of law under Sec. 341 of the code, we have chosen to treat it as though it was in proper form. The defendants each filed separate motions for a new trial, which were overruled and excepted to.

The defendant, Cruse, then filed a motion for judgment against the plaintiff on the special finding of the Court, notwithstanding the conclusions of law, " for the reason that the conclusions of law are erroneous."

This motion was, likewise, overruled by the Court, to which the defendant excepted.

An appeal was then taken to the General Term.

The first error assigned is the overruling of the demurrer to the amended fifth paragraph of the reply. The plaintiff avers in this paragraph that the only agreement between the plaintiff, and the defendant was in writing, and is the same set out in the third paragraph of answer, and it avers that after the brick in the complaint set out were delivered to the defendant and were received by him, the said contract was rescinded and abandoned.

The defendant insists that the reply was bad because it did not show that the contract was rescinded before any rights had accrued to the defendant under the contract.

As the defendant admits in his counter-claim that he received the first kiln of brick under the contract, and only

complains because other kilns were not delivered, we think it sufficiently clear, from the reply, that the recision therein pleaded, was made before the time for the delivery of the brick contained in the other kilns burned by the plaintiff, and hence before the rights of the defendant had accrued.

In any event the defendant could not have been injured by the ruling, for the fourth paragraph of reply is precisely the same in legal effect as the fifth, and to it no objection is made.

The second alleged error is the overruling of the motion of the defendant Cruse for judgment in his favor "on the special finding, notwithstanding the conclusions of law, for the reason that the conclusions of law are erroneous."

If the Court, at the request of one of the parties, makes a special finding of facts and conclusions of law thereon, the terms of the statute, (*Sec.* 341 *of the code,* 2 *G. & H., page* 207) require judgment to be entered in accordance with the conclusions of law, and the only mode of saving objections to the conclusions of law is by entering exceptions to the same. A motion for judgment on the special finding will not present the question. Neither will a motion for a new trial. *Pedens, administrator,* v. *King et al.,* 30 *Ind.,* 181 ; *Rathburn* v. *Wheeler,* 29 *Ind.,* 601 ; *Luirance et al.,* v. *Luirance,* 32 *Ind.,* 198. See, also, *Carter* v. *The Augusta Gravel Road Company. Wilson's Superior Court Reports,* 1, 14.

There was, therefore, no error in overruling the motion.

Exceptions were, however, taken to the conclusions of law, and the next error assigned is the alleged error in the conclusions of law upon the facts in the special finding.

The Court found that the contract set out in the pleadings was made, and at the time of making the contract, the plaintiff was operating a brick yard in the southern portion of the city of Indianapolis, that he burned one kiln of

brick which was taken by the defendant Cruse on the contract, but Cruse complained that there was too much lime in them, and that there is due the plaintiff on the brick so taken the sum of $281.35. That the plaintiff then made and burned a second kiln of brick, and the defendant Cruse before the same was finished, informed the plaintiff that if that kiln had more lime in it than the first one had, he, the plaintiff, must get another purchaser for it, but that he wanted to see it before it was sold to another, that he wanted the good portion of the kiln, and the plaintiff must get another purchaser for the portion having too much lime; that after receiving this information, and before the defendant saw the kiln, the plaintiff sold the kiln to one Adams, and after the sale the defendant demanded the brick, but did not state where he wanted them delivered. The plaintiff refused to deliver them because he had, after receiving the information from the defendant, sold them to another person, and because they had more lime in them than there was in the first kiln. The Court also found that there was more lime in the second than there was in the first kiln, and that it was no fault of the plaintiff that there was lime in the brick; that the lime was in the clay of which the bricks were made, and that the defendant, when he made the contract, was acquainted with the place where the clay was to be got. Other facts were found with reference to the indebtedness of the Cabinet Makers' Union to the defendant, notice, &c., under the law regulating mechanics liens, &c., which are not necessary to be noticed here.

Upon these facts the Court found as a matter of law that the defendant " Cruse was bound to take the brick under the contract as a whole, unconditionally, and not in parcels, and that his notice to the plaintiff operated as an abandonment of the original contract, and authorized the plaintiff to sell the said brick," and that the plaintiff was entitled to recover, &c.

As the plaintiff was not in fault with regard to the lime in the brick, it constituted no valid reason to justify the defendant in refusing to take any portion of the brick. He contracted for the brick, knowing the place where they were to be made, and the material of which they were to be composed, obtained, and no fraud or wrong is imputed to the plaintiff.

The time had not come for the delivery of the second kiln of brick, before complaint was made of the lime in the brick already delivered, and the defendant was informed by the plaintiff, that if the second kiln had more lime in it than the first one had, he, the plaintiff, must get another purchaser for it; but that he wanted to see it and would take the good portion of the kiln, but the plaintiff must get another purchaser for the portion having too much lime in it. The plaintiff is thus informed in advance that the defendant will not comply with his contract, for in no event does he propose to take all the brick in the kiln.

The question thus presented is this: was the plaintiff, under the circumstances, bound to hold the brick subject to the order of the defendant, or might he treat the contract as broken, or abandoned by the defendant and dispose of the brick to other parties.

The following principles of law may be considered well settled by authority, as well as sustained by good sound reason.

If a party, bound to the performance of a contract at a future time, puts it out of his own power to fulfill it, an action will at once lie for the breach of the contract, and notice of an intended breach of a contract to be performed in future has a like effect.

In a recent case in the Exchequer Chamber, Cockburn, C. J., on a review of the authorities, says:

" The promissee, if he pleases, may treat the notice of

intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any intervening circumstance which would justify him in declining to complete it."

On the other hand, the promissee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

*Frost* v. *Knight, Law Reports,* 7 *Exchequer* 111. See, also, *Hochster* v. *De la Tour,* 2 *E. & B.,* 678; *The Danube & Black Sea Co.,* v. *Xenos,* 13 *C. B.* (N. S.) 825; *Avery* v. *Bowden,* 5 *E. & B.,* 714; *Reid* v. *Hoskins,* 6 *E. & B.,* 953; *Barwich* v. *Buba,* 2 *C. B.* (N. S.) 563.

By taking timely measures, on the receipt of notice of an intention not to comply with a contract to be performed in the future, the injurious effects which would otherwise flow from the non-fulfillment of a contract may be averted, or materially lessened, and the interests of each party better protected. *Frost* v. *Knight, supra.*

In view of these principles of law, we think the plaintiff, after having received notice from the defendant that if the second kiln of brick had more lime in it than the first one, he would not take it; or, at least that he would only take the good portion of it, might treat the contract as broken by the

defendant, and if he chose to waive his right of action against the defendant for the breach, and protect himself from loss by selling to other parties, he had a right to do so; and the defendant having thus broken the contract cannot complain. Having given notice that he would not comply with the contract as a whole, he could not without the consent of the plaintiff acquire any rights under the contract by offering to examine the kiln, and take the good portions of the brick.

We see no error, therefore, in the conclusions of law.

Judgment affirmed.